```
                                              USDC SDNY
                                              DOCUMENT
UNITED STATES DISTRICT COURT                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                 DOC #: _____
------------------------------------------------------------X DATE FILED: June 1, 2015
```

ROBERT J. GIUFFRA and MARY GIUFFRA,      :
                                          :
           Plaintiffs,            :
                                          :        13-cv-6880
         -v-                      :
                                          :        OPINION & ORDER
VANTAGE TRAVEL SERVICE, INC. d/b/a        :
VANTAGE DELUXE WORLD TRAVEL,              :
                                          :
           Defendant.             :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

      On June 27, 2013, Robert J. Giuffra and his spouse Mary Giuffra (the "Giuffras" or "plaintiffs") filed this action in state court against defendant Vantage Travel Service, Inc. ("Vantage"), seeking damages for injuries they suffered when Robert Giuffra was mugged while traveling on a tour plaintiffs had purchased from Vantage. On September 27, 2013, Vantage removed the action to this Court. (ECF No. 1.) On May 29, 2014, plaintiffs filed an Amended Complaint. The Amended Complaint asserts four claims against Vantage—for negligence, breach of contract/warranty, breach of fiduciary duties, and loss of consortium. (ECF No. 20 ("Am. Compl.").) Before the Court is Vantage's motion for summary judgment as to all claims. For the reasons set forth below, this motion is GRANTED.

I. FACTUAL BACKGROUND

Plaintiffs—well-educated and experienced travelers—purchased a pre-packaged European tour from Vantage for June and July 2012.[1]  On July 14, 2012, while traveling in Riga, Latvia, Robert Giuffra was mugged and assaulted by an unknown individual.  The mugging took place in an enclosed pedestrian passageway adjacent to a stone bridge connecting plaintiffs' hotel to the "Old Town" of Riga.  At the time of the mugging, plaintiffs were returning from dinner in the Old Town.  Although alternative means of transportation were available, plaintiffs decided to travel on foot.  Plaintiffs allege that a tour guide, Irene Nikolashina, had suggested that they go to Old Town for dinner, and indicated that walking across the stone bridge was "very safe."

When plaintiffs booked the tour from Vantage, they received a copy of the Vantage Tour Participation Agreement (the "Agreement").  The Agreement indicated that Vantage's suppliers abroad were independent contractors and expressly disclaimed any warranty or responsibility for their actions:

> **Responsibilities & Liability**
> The responsibility of Vantage . . . is strictly limited.  As a tour operator, Vantage organizes, promotes and sells tour programs consisting of certain travel services, including surface, air and water transportation, sightseeing excursions, and cruise/hotel accommodations, that Vantage purchases or reserves from various suppliers (collectively, "Suppliers").  Vantage does not own or operate any of these Suppliers.  The Suppliers providing travel services for Vantage's tour programs are independent contractors, and are not agents or employees of Vantage.  As such, Vantage is not responsible for direct, indirect, consequential, or incidental damage, injury, loss,

---

[1] In booking the tour, the Giuffras never met face-to-face with any Vantage employee or representative; Mrs. Giuffra booked the tour over the phone.  (Defendant's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Def.'s 56.1") ¶ 10, ECF No. 42.)

2

>accident, delay, or irregularity of any kind occasioned by reason of any act or omission beyond its control, including, without limitation, any negligent or willful act or failure to act of, or breach of contract by, any Supplier or any other party. . . .  By utilizing the travel services of the Suppliers, you agree that you will look only to such Suppliers in respect of any accident, injury, property damage, or personal loss to you or to those traveling with you, and that neither Vantage nor any representative of Vantage shall be liable.

(Declaration of Alicia Guevara ("Guevara Decl.") Ex. 1 at VANTAGE 000043, ECF No. 44.)

The Agreement also disclaimed all liability for criminal acts: "Vantage is not responsible for . . . criminal activities or any other act or event beyond the direct control of Vantage."  (Id.)

The Giuffras also received an invoice containing essentially identical disclaimers.  (See Def.'s 56.1 ¶¶ 12-14; Declaration in Support of Motion for Summary Judgment ("Weller Decl.") Ex. 6, ECF No. 43.)  The invoice stated that "[p]ayment of this invoice indicates acceptance of the Terms and Conditions contained in the Tour Participation Agreement."  (Weller Decl. Ex. 6.)

In addition, the Giuffras received several warnings regarding the possibility of theft and pickpocketing during the trip.  They received a personal travel guide with the following warning:

>**Personal Safety**
>Please keep in mind that in any tourist destination, you need to be aware of your surroundings.  We recommend that you use a money protector that can be worn around your neck.  Flashy jewelry should be left at home.  Never place your camera or purse down, or hang it on the back of your chair.  Although incidents of theft and pickpocketing while on tour are rare, it is important to be cautious and aware.

(Weller Decl. Ex. 7 at 30.)  In addition, Robert Giuffra acknowledged in his deposition that plaintiffs' tour guide, Ms. Nikolashina, stated that they should be careful in Latvia and other Baltic countries—and that Mr. Giuffra understood this to mean that there was a greater risk of pickpocketing in those countries.  (Def.'s 56.1 ¶ 39.)

II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).  "The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citations omitted).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Jeffreys

v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (internal quotation mark omitted).

III.  DISCUSSION

Pickpocketing and muggings can happen anywhere.  When people take trips to interesting places, they should heed their tour operator's advice to keep their wits about them.  No one can foresee and protect against random acts of street crime.

Plaintiffs' negligence claim rests on the contention that the area where Mr. Giuffra was mugged was unsafe, that Vantage had a duty to investigate and warn plaintiffs that it was unsafe, and that Vantage is liable for the tour guide's alleged misrepresentation that the bridge was safe.  Plaintiffs' claim must be dismissed, regardless of whether the bridge was, in fact, "safe."  Simply put, "a travel agent is not an insurer or guarantor of [its] customer[s'] safety" and cannot be held liable for a mugging on the public streets of Riga.  Lachina v. Pac. Best Tour, Inc., No. 93 CIV. 6193 (HB), 1996 WL 51193, at *1 (S.D.N.Y. Feb. 7, 1996) (citation omitted).

To succeed on a negligence claim, plaintiffs must establish the following elements: (1) duty; (2) breach of duty; (3) proximate causation; and (4) damages. See Becker v. Schwartz, 386 N.E.2d 807, 410 (N.Y. 1978).  "If one of these essential elements is absent from plaintiffs' case, as a matter of law, then the rest of the plaintiffs' case is immaterial, and summary judgment for the defendants is appropriate."  Carley v. Theater Dev. Fund, 22 F. Supp. 2d 224, 227 (S.D.N.Y. 1998).

Here, Vantage had no legal duty to protect plaintiffs against the particular type of harm that befell them at the particular time and location in Latvia.  See

5

Lauer v. City of New York, 95 N.Y.2d 95, 100 (N.Y. 2000) ("Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." (citations omitted)). "A tour operator has no duty to warn group members of a possible hazardous condition on property it neither owns nor occupies." Maraia v. Church of Our Lady of Mount Carmel, 36 A.D.3d 766, 767 (N.Y. App. Div. 2007) (citations and internal quotation marks omitted); see also Lachina, 1996 WL 51193, at *1 ("Under New York law[2], tour companies and travel agents . . . owe no duty to tour members to inform them of possible hazardous conditions on the property of others." (citations omitted)); Carley, 22 F. Supp. 2d at 227-29. The rationale for this rule is clear: "[a] travel agent proffering hundreds of different tours all over the world" cannot be charged with the duty to foresee every accident that may befall tourists abroad. Lachina, 1996 WL 51193, at *1.

Plaintiffs cite several cases that illustrate that this "no duty" principle has exceptions. This is not surprising: each tort case is unique and must be analyzed on its own facts. None of these cases, however, points to any duty in this case. First, plaintiffs cite a few cases for the proposition that a travel agent may have a duty to warn if it has actual knowledge of particular safety hazards, or if such information is "readily available." See, e.g., Creteau v. Liberty Travel, Inc., 600 N.Y.S.2d 576, 577 (N.Y. App. Div. 1993) ("[W]here the agent has knowledge of safety factors or where such information is readily available, a travel agent has the duty to inform

---

[2] While the Vantage Tour Participation Agreement contains a choice-of-law provision designating Massachusetts law, both parties have extensively cited cases applying New York law (as well as other states' law) and have not argued that the Court should limit itself to Massachusetts law.

the customer of those factors." (citations omitted)).  This exception is very narrow, however—and does not impose a duty on travel agents to conduct safety investigations of all areas through which tourists may travel.  See id. ("A travel agent ordinarily is not an insurer or guarantor of its customers' safety and, without a specific request, is not obligated to investigate safety factors of lodging accommodations." (citations omitted)); Manahan v. NWA, 821 F. Supp. 1105, 1110 (D.V.I. 1991) ("Plaintiff has entered into the record the anecdotal statements . . . characterizing [the subject area] as a 'high crime' region.  However, defendants had no legal duty to do a general survey of crime statistics in St. Thomas." (citations omitted)), aff'd sub nom., Manahan v. NWA Inc., 995 F.2d 218 (3d Cir. 1993).  Here, there is no genuine dispute that Vantage did not have actual prior knowledge of any dangerous conditions at or near the stone bridge on July 14, 2012—and there is no evidence before the Court that information about such conditions was in Vantage's possession or otherwise "readily available."  (See Defendant's Response to Plaintiffs' First Request for Interrogatories # 8 (Vantage was "unaware of any specific investigations of any specific or unusual 'hazards' or 'dangers' to travelers" on the bridge in June and July 2012), ECF No. 51-16; Def.'s 56.1 ¶ 59 ("At no time in 2011 or 2012 did Vantage Tour have notice of any unusual criminal threat in [plaintiffs' hotel] or its immediate vicinity.").)  Contrary to plaintiffs' assertion, Vantage had no duty to talk to local police, peruse crime statistics, or otherwise investigate the safety of every place plaintiffs may choose to go while on tour.

Plaintiffs' reliance on <u>Cohen v. Heritage Motor Tours, Inc.</u>, 205 A.D.2d 105 (N.Y. App. Div. 1994), is also misplaced.  In <u>Cohen</u>, a tour participant sued a tour operator for injuries she sustained when she fell on slippery stepping stones while traversing a running brook.  <u>Id.</u> at 106.  The plaintiff alleged that the tour director, who was the defendant's employee (not an independent contractor), "went to the brook and, with a wave of her hand, directed the group to follow her across the water by means of the stepping stone path."  <u>Id.</u> at 106-07.  After reaffirming the general principle that travel agents are not liable for harm that befalls tour participants, the Appellate Division held that "[i]f [the tour director] directed the tour participants to follow her across the stones, she assumed a duty to exercise reasonable care."  <u>Id.</u> at 108.  Here, there is no evidence that Vantage or its employees directed plaintiffs to cross the stone bridge on foot when they were returning from dinner on July 14, 2012—or otherwise assumed any duty as to their safety.  To the contrary, plaintiffs received at least two documents from Vantage expressly <u>disclaiming</u> any such duty.

Even if Vantage owed a legal duty to plaintiffs, there is no genuine dispute that Vantage fulfilled such duty by providing plaintiffs with adequate warnings regarding the possibility of theft and pickpocketing, and the importance of being careful during their trip.  In particular, plaintiffs received a personal travel guide with the following safety warning:

> **Personal Safety**
> Please keep in mind that in any tourist destination, you need to be aware of your surroundings.  We recommend that you use a money protector that can be worn around your neck.  Flashy jewelry should be

> left at home.  Never place your camera or purse down, or hang it on the back of your chair.  Although incidents of theft and pickpocketing while on tour are rare, it is important to be cautious and aware.

(Weller Decl. Ex. 7 at 30.)  Moreover, Mr. Giuffra acknowledged in his deposition that when plaintiffs began the portion of the trip through the Baltic States, their tour guide stated that they needed to be more careful:

> Q. But Irina told you that you have to be careful in the areas you were going to, right?
>
> A. Yes.  She emphasized more that you had to be worried about the Baltic Republics. . . .
>
> Q. Did she tell you that you had to be careful because people get pickpocketed from time to time?
>
> A. Specifically, not that you had to worry about pickpockets.  She said, You have to watch yourself.
>
> Q. You have to watch yourself why?
>
> A. That someone could be pickpocketing or beating you up or so forth.

(R. Giuffra Dep. 27:7-10, 28:24-29:8, ECF No. 43-3; see also id. 19:10-19.)  These warnings are the most that can be expected under the circumstances—and the law does not require more.

      The tour guide's alleged statement that the stone bridge was "very safe" does not offset or negate these warnings—and does not indicate any negligence on her part.  A statement that a bridge is "safe" does not mean that pickpocketing or theft is <u>guaranteed</u> not to happen; at most, it suggests that, in the speaker's experience, dangerous conditions are unlikely to occur.  See Manahan, 821 F. Supp. at 1109 ("Whitehouse stated that she believed the road was well-lit and safe for plaintiff and

her friend to travel at night on foot. . . . Whitehouse's statement could not reasonably be understood as a guarantee that crime in St. Thomas, about which plaintiff had been warned generally, could not occur in the area of Yacht Haven and Havensight. . . . [The statement] could only mean that, as far as she knew, there had been no prior instances of physical attacks upon tourists or others who had traveled the route at night, or in the day, and that she did not know of any conditions that represented a specific danger to the plaintiff were she to walk to and from the restaurant."). There is no evidence that Ms. Nikolashina was untruthful or otherwise negligent when she opined that the bridge was safe.[3]

In any event, even if the tour guide were somehow negligent, her negligence cannot be attributed to Vantage. To start, the tour guide is "several bridges too far": she is a contractor hired by one of Vantage's independent contractors—Guides and Tourist Services ("GTS") of Moscow, Russia. (See Def.'s 56.1 ¶¶ 26-29.) See Russell v. Celebrity Cruises, Inc., No. 96 CIV. 3328 (BSJ), 2000 WL 1013954, at *1 (S.D.N.Y. July 24, 2000) ("Where, as here, the travel agent's actions are limited to making reservations or packaging tours, the companies providing the actual services are considered to be independent contractors, precluding liability against the travel agent for any of the contractor's tortious activity." (citation omitted)); Dorkin v. Am. Exp. Co., 351 N.Y.S.2d 190, 190 (N.Y. App. Div. 1974) (an

---

[3] Plaintiffs assert that Ms. Nikolashina "admitted post incident that the area was unsafe" to Vantage's representative, Alicia Guevara. (Plaintiffs' Memorandum of Law ("Pls.' Opp.") at 7, ECF No. 49.) However, Ms. Nikolashina did not say that the area was unsafe; rather, she told Ms. Guevara that she had recommended that the Giuffras take the available, free cars. (Guevara Dep. at 65-67, 72-74, ECF No. 51-15.) Ms. Guevara testified that she did not know why Ms. Nikolashina gave this advice.

independent contractor relationship "precludes any liability on the part of defendant, either on a theory of negligence or breach of contract").

Moreover, prior to their trip, plaintiffs received comprehensive disclaimers of liability for injuries sustained abroad.[4] These disclaimers state that Vantage's suppliers are independent contractors, that Vantage does not own or operate these suppliers, and that Vantage is not responsible for injuries "of any kind occasioned by reason of any act or omission beyond its control, including, without limitation, any negligent or willful act or failure to act of, or breach of contract by, any Supplier or any other party." (Guevara Decl. Ex. 1 at VANTAGE 000043.) The disclaimers also state that Vantage is not responsible for "criminal activities or any other act or event beyond the direct control of Vantage." (Id.) Thus, to the extent plaintiffs base their negligence claim on Ms. Nikolashina's alleged statement, the claim must be dismissed. See Weiner v. British Overseas Airways Corp., 60 A.D.2d 427, 433-34 (N.Y. App. Div. 1978) ("Since BOAC, as the tour arranger, had no duty to insure against negligence of the independent contractors with whom it arranged to provide the . . . services it included in its tours and, in fact, specifically disavowed any such

---

[4] Plaintiffs argue that defendant was required to plead waiver/release as an affirmative defense. (Pl.'s Opp. at 26-27.) Plaintiffs are correct that Rule 8(c) of the Federal Rules of Civil Procedure requires a responsive pleading to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). However, notwithstanding a defendant's failure to timely plead an affirmative defense, "a district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings. In such circumstances, the district court may construe the motion for summary judgment as a motion to amend the defendant's answer." Saks v. Franklin Covey Co., 316 F.3d 337, 350-51 (2d Cir. 2003) (citations omitted). Here, plaintiffs' claims rely on their contracts with Vantage (see Am. Compl. ¶¶ 9-10, 22-26), such that entertaining defendant's waiver/release defense—which is based on the same contracts—would not result in any undue prejudice to plaintiffs. Nor is there any evidence of "bad faith or dilatory motive" on defendant's part, futility, or risk of undue delay of the proceedings. Accordingly, the Court construes defendant's motion for summary judgment to include a motion to amend the answer to assert a waiver/release defense—and GRANTS that motion.

duty in its brochure, no claim of negligence can successfully be directed against it if the tour purchaser is injured by the contractor's negligence while availing himself of the services provided by the contractor."); see also Carley, 22 F. Supp. 2d at 229; Hofer v. Gap, Inc., 516 F. Supp. 2d 161, 174-75 (D. Mass. 2007).

Finally, plaintiffs' remaining claims—for breach of contract/warranty, breach of fiduciary duties, and loss of consortium—must be dismissed. As described above, it is undisputed that Vantage did not guarantee that plaintiffs would not be injured while on tour—and did not assume any contractual obligation as to the safety of plaintiffs' trip. To the contrary, Vantage provided several warnings regarding the possibility of theft and pickpocketing, and expressly disclaimed liability for injuries resulting from criminal activity or negligence of third parties. Accordingly, plaintiffs' claim for breach of contract/warranty must be dismissed. See Dorkin, 351 N.Y.S.2d at 192 ("The disclaimer in the tour contract negates any intent of defendant to assume a contractual obligation for such safety."); Weiner, 60 A.D.2d at 437 ("In the face of BOAC's specific disclaimer, known to plaintiff when she purchased the tour, there is no basis for her claim of breach of warranty."). Plaintiffs' claim for breach of fiduciary duties also fails: Mrs. Giuffra's purchase of a pre-packaged tour from Vantage did not give rise to a fiduciary relationship. See Russell, 2000 WL 1013954, at *2 (a travel agency does not owe a fiduciary duty to its customers); see also WIT Holding Corp. v. Klein, 724 N.Y.S.2d 66, 68 (N.Y. App. Div. 2001) ("[A]n arms-length business relationship does not give rise to a fiduciary obligation." (citation omitted)). Moreover, even if Vantage were plaintiffs' fiduciary,

there is no evidence that it breached any fiduciary duties.  Finally, Mrs. Giuffra's claim for loss of consortium must be dismissed as derivative of her husband's dismissed claims.  See Maidman v. Stagg, 82 A.D.2d 299, 301 (N.Y. App. Div. 1981).

IV.  CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED.  The Clerk of Court is directed to terminate the motion at ECF No. 41 and to terminate this action.

SO ORDERED.

Dated:     New York, New York
           June 1, 2015

_____
KATHERINE B. FORREST
United States District Judge